Dear Ms. Martin:
You have requested an opinion of the Attorney General, in your capacity as Assistant Parish Attorney for the Plaquemines Parish Government (Parish), regarding the use of Parish equipment and personnel to maintain and improve private lanes. You state that these private lanes are numerous throughout the Parish and are most often on single family-owned property, or on a parcel which has been divided among family members, without a subdivision of the property under the Parish's Subdivision Ordinance. You further state that many of these private lanes are nothing more than family driveways.
Pursuant to the Parish's Subdivision Ordinance, application may be made for the division of property into "five lots or less". However, when this occurs, the owner/subdivider is required to install and maintain his own roadway. Your first question is whether the Parish can legally maintain and improve the private lanes or streets described hereinabove.
The constitutional norm for the lawful use of public funds and property is found at Article VII, Section 14 of the Louisiana Constitution of 1974. It provides, in pertinent part, the following:
 Section 14. (A) Prohibited Uses.
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
 (B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; . . .
This identical language was present in Article IV, Section 12 of the Louisiana Constitution of 1921, Article 58 of the Constitution of 1913 and Article 58 of the Constitution of 1898. In fact, the substance and language of Article VII, Section 14 originated in Article 56 of the Constitution of 1879.
The legal principle replicated in Article VII, Section 14 is thus one of the most enduring and formally consistent constitutional principles in Louisiana law. This is of some import for interpretation for it means that there is almost one hundred years or jurisprudence interpreting the identical provision in different Constitutions.
In addition, this office has issued a legion of opinions which address the issue before us. We offer the following for your reference:
Attorney General Opinion No. 76-649 concluded that the Bienville Parish Police Jury could not use parish equipment or materials to blacktop driveways located on private property.
Opinion No. 77-1023 addressed the issue of whether the St. John the Baptist Police Jury could participate in a joint venture with private individuals to develop a highway right-of-way which would result in the enhancement of the property owned by the private joint venturers. The author cited R.S. 33:1236(2) which enumerates the power of police juries and other parish governing authorities to include the following:
 (2)(a) To regulate the proportion and direction, the making and repairing of the roads, bridges, causeways, dykes, dams, levees and highways when, in the opinion of the police jury, such work will further the best interest of the parish and the parish road system; (Emphasis added.)
The opinion noted that, while the parish police jury has the discretion in the location and/or repair of roads and highways, this discretion is subject to the constitutional limitations of Article VII, Section 14. Thus, the opinion concludes that if the benefits resulting from the construction of the road inure primarily to the private individuals, and the benefits accorded to the public are merely incidental, the police jury's participation in the joint venture would constitute a prohibited donation of the funds, property or things of value of the parish.
A similar conclusion was reached in Opinion No. 78-188, which addressed the issue of whether the Assumption Parish Police Jury could take into the parish road system and maintain dirt roads which join a main thoroughfare with a parcel of land consisting of two or more houses. The author notes that Louisiana law requires the making and repairing of roads, bridges and streets by the police jury to be done only when such work furthers the best interest of the parish and the parish road system. He concludes that it would seem reasonable for the parish to repair and/or maintain a dirt road connecting two roads within the parish road system, where the road facilitates a crossover of traffic between the two parish roads. However, if the dirt road simply leads to one or two homes and does not serve the public at large, it would be legally inappropriate to expend labor and materials on the maintenance and repair of the road.
Opinion No. 78-1643 concluded that the Catahoula Parish Police Jury could not expend public labor, material or funds on the maintenance and repair of a road leading to one or even several residences, but not used by the public at large.
Opinion No. 81-1223 deemed unconstitutional the construction or maintenance of private driveways by the Beauregard Parish Police Jury.
Opinion No. 82-784 concluded that it would be a violation of Article VII, Section 14 for the LaSalle Parish Police Jury to pave and maintain a privately owned church parking lot. The opinion further concluded that any police juror who failed to prohibit this practice would be guilty of malfeasance in office, provided that he or she was aware of the improper use of public property and personnel.
Opinion No. 89-452 concluded that the City of Vidalia could not enter into a cooperative endeavor with the owner of a trailer park providing for the use of municipal equipment to grade the gravel streets of the park for a reasonable fee. Such an arrangement would violate Article VII, Section 14.
Opinion Nos. 94-388 and 99-94 address the issue of the exception found in Article VII, Section 14(B)(1) relating to programs of social welfare for the aid and support of the needy. This office recognized the validity of the use of parish equipment and labor on private property in accordance with systematic programs of financial support for the needy. In carrying out such programs, the governing authority must establish objective eligibility requirements and formal guidelines to ensure that all individuals qualifying are needy and have an equal opportunity of receiving public assistance.
The streets and lanes you have presented for our consideration are private in nature. The benefits resulting in their maintenance and improvement would inure primarily to private landowners. Benefits to the general public, if any, would be merely incidental. Accordingly, the use of Parish labor, equipment and/or materials to maintain same is clearly prohibited by Article VII, Section 14.
An exception to this prohibition applies to the assistance of private individuals in accordance with a systematic program of financial support for the needy. Such a program must be administered in accordance with the establishment of formal guidelines to insure that all individuals qualifying are truly needy and have an equal opportunity of receiving public assistance.
We turn now to your second question, to wit: Can the Parish assume control of the private streets, via donation from the private owners, and thereafter maintain and/or improve same? Further, and in connection with said donations, can the Parish utilize its own staff to make surveys of the private streets, research the public records to determine ownership of the property, prepare the legal acts of donation and perform all tasks incidental to the acceptance of these private streets by the Parish? Parenthetically, you note that all subdivision applications submitted pursuant to the Subdivision Ordinance require the owners to furnish this documentation at their expense.
For the same reasons expressed hereinabove, we are of the opinion that these transactions merely constitute an attempt to indirectly circumvent the prohibitions contained in Article VII, Section 14. It should also be noted that the use of state and/or local funds for such purposes violates the provisions of the Parish Transportation Fund Act found at R.S. 48:751, et seq. A violation of this Act can result in the forfieture of state funding, sanctions by the Legislative Audit Advisory Council and civil and/or criminal liability of individual council members.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEUYOUB Attorney General
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj